L. T. Campbell, Inc., Dissolved, Katie Campbell and L. T. Campbell, Jr., Trustees for the Creditors and Stockholders v. Commissioner. Katie (Mrs. L. T. Sr.) Campbell v. Commissioner. Lucius T. (L. T. Jr.) Campbell v. Commissioner.
L. T. Campbell, Inc. v. Commissioner
Docket Nos. 6031, 6032, 6033.
United States Tax Court
1945 Tax Ct. Memo LEXIS 73; 4 T.C.M. (CCH) 919; T.C.M. (RIA) 45305; September 28, 1945
*73 W. Edward Lee, Esq., for the petitioners. D. Louis Bergeron, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: These proceedings, consolidated for hearing, involve income tax, declared value excess profits tax, and excess profits tax deficiencies determined against the corporate petitioner for the calendar year 1941 and for the period January 1 - August 31, 1942, as follows: Declared
Excess
Income
Value Excess
Profits
Tax
Profits Tax
Tax
1941
$ 331.97
$232.56
$ 85.83
1942 period
1,147.12
4,747.12
Overpayments are claimed by the same petitioner as follows: Declared
Excess
Income
Value Excess
Profits
Tax
Profits Tax
Tax
1941
$1,722.13
$1,018.95
$778.11
Comparable deficiencies determined against Katie Campbell and L. T. Campbell, Jr., individually as transferees, are also involved. The petitioners, having receded from certain assignments of error set forth in their pleadings, the issue remaining is whether respondent erred in determining that income earned in the taxable periods was taxable to the corporate petitioner. Certain of the facts *74 were submitted by a stipulation and supplemental stipulation, and other facts were adduced at the hearing by oral testimony and documentary evidence. Those facts hereinafter set out which are not from the stipulations are found from the record. Findings of Fact The stipulated facts are hereby found accordingly. L. T. Campbell, Inc., (hereinafter sometimes referred to as the corporation) at all times herein material was a corporation organized and existing under the laws of the State of Texas, with its principal office and place of business located in Gregg County, Texas. L. T. Campbell, Sr., (hereinafter referred to as decedent) died testate on August 7, 1937, in Gregg County, Texas. He was survived by his widow, Katie Campbell, and by four children of that marriage: L. T. Campbell, Jr., born February 13, 1915; Madelyn, born July 16, 1918; Lucille, born August 23, 1920; and Catherine (sometimes referred to as Kathryn), born July 17, 1924. All of the daughters were minors on August 7, 1937. Lucille was married in January, 1940, at which time she became enfranchised and was thereafter known as Lucille Brown. Madelyn was married in August, 1942, and was thereafter known as Madelyn *75 Sweeney. Catherine had her disabilities of minority removed by court action on December 7, 1943. Decedent executed his last will on August 4, 1937, and bequeathed all of his properties, community property under the laws of the State of Texas, to his wife and four children in accordance with the laws of descent and distribution of that state. The will directed that the independent coexecutors, without bond, therein appointed by him, Katie Campbell and L. T. Campbell, Jr., take no other action in any probate court except to probate the will and file an inventory. The appointments were approved by the court on August 24, 1937, and appraisers were named by the court. The inventory and appraisement filed with the court on April 4, 1938, after approval by the co-executors, disclosed the following assets and liabilities: Amount
Per cent
Cash
$ 38,496.46
26.35
Miscellaneous Receivables
41,412.62
28.35
Stock Investments
6,910.12
4.73
Oil Assignments
7,267.23
4.97
Leases and Royalties
13,666.84
9.36
Other Assets
3,028.50
2.08
Real Estate (Other than
business)
11,136.50
7.62
Camp Sites, etc.
2,150.00
1.47
Autos, Trucks, etc.
22,012.50
15.07
Total Assets
$146,080.77
100.00
Less Accounts Payable
$ 8,469.42
5.80
Net Assets
$137,611.35
94.20
*76 The ratio of the business assets, teaming and trucking equipment, to total assets as of the date of death, based on the inventory and appraisement thereof, was 16.52 (1.47 plus 15.07) per cent. Katie Campbell had an undivided one-half interest in the estate. The four children each had an undivided one-eighth interest. The business which the decedent was conducting at the time of his death consisted of a teaming and trucking business, including transporting oil field machinery, supplies, and equipment by trucks and trailers of various types and sizes. In addition, certain trucks were equipped with winches and other devices for the purpose of loading and unloading heavy freight for others; there were also other trucks and devices for rigging derricks and stringing pipes. The business after the death of decedent was conducted by Katie Campbell and L. T. Campbell, Jr. with the same equipment (except for necessary substitutions, repairs and replacements and additions from time to time) in the same manner and at the same location until the fall of 1940. During all of this time Katie Campbell and L. T. Campbell, Jr. were the exclusive managers of the business. The Social Security taxes, *77 Titles VIII and IX, Federal Insurance Contributions Act taxes (FICA) and Federal Unemployment Tax (FUT) were paid, based on returns filed under the employer's identification number assigned to decedent in 1936, at the inception of the Social Security laws. Under the date of October 17, 1940, a corporate charter application was executed and acknowledged by Katie Campbell, a feme sole, L. T. Campbell, Jr., A. P. Norris and Lee Hammon, who spelled his name as "Hammond" when acting as a notary public. The application gave as the corporate purpose: "to transport goods, wares and merchandise or any valuable thing, as authorized by subdivision 69 of Article 1302, Revised Statutes of Texas, of 1925." The affidavit attached to the application further disclosed that the incorporators, four in number, were to be the directors and stockholders; capital stock was to be $16,000, divided into 160 shares of stock of the par value of $100, all of which was in good faith subscribed to and paid in as follows: Shares
Stockholder
Amount Paid
Subscribed
Katie Campbell
$ 7,900.00
79
L. T. Campbell, Jr.
1,900.00
19
Madelyn Campbell
2,000.00
20
Lucille Brown
2,000.00
20
Catherine Campbell
2,000.00
20
A. T. Norris
100.00
1
Lee Hammon
100.00
1
$16,000.00
160
*78 It was also disclosed by the affidavit that the full amount of the capital stock had been paid in thus: $200 in cash, together with property of the value of $20,000 received at a price of $15,800, represented by the trucks, livestock and other equipment located in Gregg County, Texas, owned by the Estate of L. T. Campbell. $15,800 represented the fair market value of such equipment at the time. On November 25, 1940, the Secretary of the State of Texas duly issued a certificate of incorporation of L. T. Campbell, Inc., the petitioner herein. A. T. Norris and Lee Hammon owned no interest in the estate of the decedent nor in the assets of the corporation. Their shares were qualifying shares and were endorsed in blank. A. T. Norris had been in the employ of the decedent from 1921 to 1937, as superintendent of works and equipment, which job he retained after decedent's death until September 1942, when he went into the Army. He was again in the employ of the Campbells from November 1943 to January 1944. Lee Hammon was first employed by the Estate of L. T. Campbell as bookkeeper and office worker. He continued as such until May 1942, when he went into the Army. He used the title *79 of Secretary-Treasurer of the corporation on some official and unofficial papers regarding the corporation. On March 5, 1941, there was filed in the name of the corporation with the collector of internal revenue for the second district of Texas, (hereinafter referred to as the "Collector") "Employer's Application for Identification Number Under Title VIII of the Social Security Act," being form SS-4 in which was stated the name of the taxpayer as L. T. Campbell, Inc., classed as a joint stock company. This was signed by Lee Hammon as secretary-treasurer. The number assigned was 75-0173589, which number was thereafter used by the corporation on the necessary tax returns. On April 30, 1941, the corporation filed its employer's tax return under FICA for the quarter ending March 31, 1941, disclosing its tax liability thereunder, which was paid. Return was executed by Lee Hammon as secretary-treasurer. On June 19, 1941, based upon a demand by a deputy collector, the corporation bought documentary stamps in the amount of $17.60 which were affixed to the stock certificateds on the basis of 11 cents per $100 value. On September 12, 1941, Lee Hammon as secretary-treasurer of the corporation *80 executed before a deputy collector a delinquent Employer's Tax Return under FICA for the quarter ending June 30, 1941, disclosing the corporation's tax liability, which together with penalty and interest was paid. On September 12, 1941, in the same capacity he executed such a return for the quarter ending September 30, 1941, and the tax due was paid. On December 27, 1941, the "Return of Capital Stock Tax" for the year ending June 30, 1941, was executed and filed by L. T. Campbell, Jr., as president, and Lee Hammon, as secretary-treasurer of the corporation, and the tax liability and penalty due were paid. As on other tax returns, the name of the corporation was shown as L. T. Campbell, Inc. It showed further that the corporation was engaged in teaming and trucking business, and incorporated in 1940 in Texas. In reply to a letter of the Collector of January 22, 1942, addressed to the corporation, with reference to the failure of the corporation to file an income tax return for either the calendar year 1940 or the fiscal year ended in 1941, Lee Hammon wrote the collector on or about January 29, 1942, that the corporation was "not active" in 1940, that a return was filed by the Estate *81 of L. T. Campbell for 1940, and that although the corporation was organized during 1940, it "did not operate until January of 1941. Operated as Estate of L. T. Campbell until Interstate and Intrastate Permits could be changed to L. T. Campbell, Inc." On January 31, 1942, the corporation filed its Employer's Tax Return under FICA, for the quarter ending December 31, 1941, sworn to by L. T. Campbell, Jr. as president. The tax due thereunder was paid. On the same date the corporation paid the Collector a portion of its Federal unemployment tax, under Title IX of the Social Security Act, due for 1941, and on May 14, 1942, paid an additional amount still owing. By letter dated March 14, 1942, on the corporation's letterhead, signed by L. T. Campbell, Jr., there was transmitted to the Collector the corporation's income and declared value excess profits tax return, Form 1120, and its excess profits tax return, Form 1121, for the calendar year ending December 31, 1941. The taxes due as shown thereon were paid in 1942. The returns were signed by L. T. Campbell, Jr., as president, and notarized by "Lee Hammon, Notary Public." The returns were also sworn to by L. R. Eddy, an accountant employed *82 by the corporation. An attached schedule, marked "L. T. Campbell, Inc. Balance Sheet, December 31, 1941," was as follows: L. T. CAMPBELL, INC. BALANCE SHEET DECEMBER 31, 1941
Assets
Current Assets: Petty Cash
$ 75.69
Longview National Bank
2,214.19
Accounts Receivable
19,952.31
$22,242.19
Deferred Assets: Deposits
$ 1,341.00
Employee Advances
336.65
1,677.65
Fixed Assets: Equipment
$36,381.35
Less Reserve for Depreciation
4,757.88
31,623.47
Other Assets: Due from L. T. Campbell, Jr.
$ 3,192.28
Due from Madelyn Campbell
1,532.37
Estate of L. T. Campbell
512.98
$ 5,237.63
Total Assets
$60,780.94
Liabilities and Capital
Current Liabilities: Accounts Payable
$18,208.64
Notes Payable
16,145.13
Federal Unemployment Tax
266.48
Louisiana Unemployment Tax
84.87
Texas Unemployment Tax
245.72
Federal Unemployment Tax
110.77
Federal Income Tax 1941
2,741.08
Federal Excess Profits Tax 1941
778.11
$38,580.80
Capital and Surplus: Capital Stock Outstanding
$16,000.00
Surplus
6,200.14
$22,200.14
Total Liabilities and Capital
$60,780.94
A schedule marked "L. T. Campbell. Inc. Av-
erage Borrowed Invested capital, 1941" was as
follows: Notes Payable: Longview National Bank #1
$ 4,000.00
Pegues Motor Company Notes #6, 7, 8 and 13
2,324.32
Hitchock Insurance Agency
729.95
Longview Motors
488.60
Browning & Ferris Machinery Co.
3,900.00
Longview National Bank #2
2,000.00
$13,442.87
*83 Between April, 1939, and December, 1943, bank loans for operating the business were effected by notes signed for the estate by L. T. Campbell, Jr., and Katie Campbell. Katie Campbell, on or about March 14, 1942, filed her individual income tax return for the calendar year 1941, disclosing net income from the estate of L. T. Campbell of $759.21. The return was prepared by L. R. Eddy. The return was sworn to by Mrs. Campbell before Lee Hammond, notary public. No credit for dependents was claimed. On April 30, 1942, the corporation filed its Employer's Tax Return under FICA for the quarter ending March 31, 1942; on July 31, 1942, it filed its return for the quarter ending June 30, 1942; the taxes due were paid. The returns were signed and sworn to by L. T. Campbell, Jr., as president. The April 30 return was notarized by Lee Hammond. The corporation never owned a corporate seal. The only bank account in which deposits and disbursements were reflected was the bank account opened in the name of the estate shortly after decedent's death. All checks were signed by L. T. Campbell. All insurance policies covering the period January 1, 1941, and ending August 31, 1942, were issued *84 to the Estate of L. T. Campbell or to Katie Campbell and L. T. Campbell, Jr., executrix and executor of the Estate of L. T. Campbell, deceased, with the exception of two policies, dated May 11, 1942, both of which were issued to L. T. Campbell and/or L. T. Campbell, Inc. The premiums on all policies covering this period were paid by checks drawn on the account of the Estate of L. T. Campbell. Trucks and trailers were licensed and/or registered in the name of L. T. Campbell, commoncarrier, L. T. Campbell, Inc., or Estate of L. T. Campbell. Some of the equipment carried on the side the legend "L. T. Campbell. Inc." There were no meetings held for the purpose of electing officers or directors of the corporation. No minutes were kept. A stock certificate book was acquired sometime after incorporation, and all certificates are still intact. Although some were filled out in the names of the stockholders as listed in the application for a charter, they were undated, unsigned, and bore no corporate seal. The acquisition of the stock certificate book followed inquiry of a deputy collector as to documentary stamps. As of September 1, 1942, the teaming and trucking business was transferred *85 to a partnership known as L. T. Campbell - Common Carrier, formed by Katie Campbell and L. T. Campbell, Jr. They were to have equal interests upon L. T. Campbell, Jr.'s acquiring the interests of his sisters, about which a discussion with them had already taken place. The three sisters had not participated in the business of the estate or of the corporation at any time, and did not know and were not apprised of the corporation's existence until shortly before its dissolution. Bills of sale, intended to become effective as of September 1, 1942, executed by Madelyn Sweeney and her husband on November 30, 1942, and Lucille Brown and her husband on November 19, 1942, recited conveyance of all their "right, title, interest, claim and equity in and to the following described property, which is owned and operated by the L. T. Campbell Estate and used in the trucking and hauling business." The remaining daughter subsequently transferred her interest. On September 24, 1942, the Secretary of State of Texas certified that L. T. Campbell, president, and Katie Campbell, secretary-treasurer of the corporation, had on that date filed necessary papers for the dissolution of the corporation, and *86 as a result a certificate evidencing the corporation's dissolution was issued. Prior thereto, in July 1941, the Secretary of State of Texas declared a forfeiture of the corporation's charter on his records as a result of failure to pay the state franchise tax, due on or before May 1, 1941. Thereafter, however, all of the past-due taxes and penalties were paid simultaneously with the filing of papers for the dissolution of the corporation. On October 31, 1942, Employer's Tax Return under FICA, marked "Final Return" was filed and tax paid thereunder; it was signed and sworn to by L. T. Campbell, Jr. Later certain corrections and adjustments were made in a supplemental return. Federal Unemployment Tax due from the corporation for three-quarters in 1942 was paid on January 30, 1943. On November 26, 1942 "Return of Capital Stock Tax" was filed for the year ending June 30, 1942, in which exemption was claimed as a corporation not doing business. The return was signed and sworn to by L. T. Campbell, Jr. as president, and Katie Campbell as secretary-treasurer. In a statement attached to the return it was stated that the corporation never existed and was never active, and if it had existed, *87 it was inactive during the period January 1 to August 31, 1942. Thereafter the exemption having been rejected, the tax and interest were paid. On June 30, 1943, there was filed the corporation's Return of Capital Stock Tax for the year ending June 30, 1943, in which exemption was again claimed; the claim having been rejected, the tax and interest due were paid. Incomplete income tax and declared value excess profits tax and excess profits tax returns were filed at the same time. The returns were signed and sworn to by L. T. Campbell, Jr., as president, and Katie Campbell as secretary-treasurer, and were prepared by Fred Humphrey, the corporation's accountant at that time. On or before March 15, 1943, a fiduciary income tax return for the calendar year 1942 was filed for the Estate of L. T. Campbell by the executors, disclosing net income of $10,331.19 distributable to Katie Campbell and the decedent's four children. Included in the return were the income and expenses of the trucking business for the period January 1 to August 31, 1942, and in a statement attached to the return it was stated that as of September 1, 1942, the business was being conducted by a partnership of Katie *88 Campbell and L. T. Campbell, Jr. Opinion Petitioners' concession that the corporate petitioner was duly organized under Texas law, cf. [Dec. 14,626], and their withdrawal of the assignments of error attacking specific items constituting the deficiency leave a single issue: Was the business conducted, and the resulting income consequently earned, by the corporation? If petitioners have not succeeded in demonstrating the contrary, the deficiency against the corporation must stand. On their face, and aside from the doctrine of presumptive correctness, the facts make corporate operation most reasonable. The business, concededly under the control of decedent's widow and son, and operated by them as his executors, could not have been without its physical and financial hazards. The desire to avoid personal liability on the part of all participants would have been natural. In that context, the two executors filed incorporation papers, adopted the decedent's name for the corporation, and executed an affidavit listing for transfer to it the assets of the business. Thereafter at least two persons, one of them the executor-son, purported *89 to act as officers of the corporation. Trucks and tractors engaged in the business appeared bearing the corporate name. License plates for them, at least in part, were applied for and issued in the name of the corporation. And tax returns, including capital stock and Federal income tax, were similarly prepared and filed as for a corporate business. On the other hand, non-corporate operation of the business finds no support in affirmative acts of the parties. If, as petitioners contend, the assets continued at all relevant times to be the individual property of the legatees, so that there was some sort of joint ownership or partnership enterprise, the resulting income would have been theirs when earned, or at least that of the estate. But no tax returns for the income in question on any behalf save that of the corporation were ever tendered. A number of negative considerations, it is true, are urged upon us. It does not appear that any organization meeting was held, that officers were ceremoniously elected, or that the property was formally transferred. But acts can speak louder than records, - or their absence - and this applies especially where non-production is relied upon by *90 those having the burden of proof. It does affirmatively appear that stock certificates remained unissued. But shareholders' rights are not limited to the possession of paper documents. , affirmed (C.C.A., 9th Cir.), . Insistence that the corporation did not function as a business is grounded primarily on the following contentions: (1) Some of the legatees, minors, incapable of participation in the transfer of the property, did not consent to incorporation; (2) action looking to forfeiture of the corporate charter for non-payment of franchise tax was taken shortly after its formation; (3) the corporation had no funds and no bank account of its own; (4) permissible activities of the corporation did not include the entire business. None of these elements is persuasive. While it is true that the three daughters of decedent, who were apparently beneficiaries to the extent of a 3/8ths interest in the total estate, testified that they did not know of, or consent to, the formation of the corporation, we are not convinced of the necessity of any consent on their part. Petitioners' brief asserts, as we think correctly, *91 "As to the three Campbell daughters, the management of the business by their mother and brother was imposed on them by the terms of their father's will and they had no choice about the matter." See Altgelt v. Oliver Bros. (Texas), . Coupled with the fact that they were minors, incompetent to participate effectively, is the more significant consideration that theirs was a purely beneficial inerest. [1] As late as November, 1942, after the corporation had been organized [2] and dissolved, the daughters referred, in their bills of sale, to the business property as being "owned and operated by the L. T. Campbell Estate." Why the estate should not have been legally, as well as practically, capable of transferring the business to a corporation, and operating it in that form, has nowhere been suggested.[3] In that event, of course, the stock of the corporation would be taken by the estate and held, in place of the property, for the benefit of those entitled to ultimate distribution. That, it seems to us, is exactly what the estate, by its only authoritative agents, the executors, did in fact and in law accomplish. Whether, under the circumstances, the minors could effectively *92 disaffirm upon being emancipated need not concern us here. The bills of sale show that on the contrary, they ratified the corporate existence and enjoyed its fruits, transferring to their brother, and presumably receiving the value, among other things, of "all accounts and notes receivable due and owing to * * * L. T. Campbell, Inc. by third persons." Nor does the action of the Texas Secretary of State in declaring the charter subject to forfeiture, foreclose *93 a finding that the corporate existence nevertheless continued. A forfeiture under Article 7091 of the Texas statutes (R.C.S. 1925), which this was, does not have the effect by itself of terminating the corporation's life. . The strenuous insistence that the corporation received no assets, and was consequently incapable of operating the business, does not find support in the record. It is true, as we have said, that no formal transfer appears to have taken place, and that the corporation had no bank account of its own. But, as we have seen, the operating asset of the business [4], the trucks, trailers, and similar vehicles were marked in the corporate name, and at least some of the licenses for them were so issued. Insurance policies of some undisclosed nature were taken in the corporate name. Petitioners apparently concede that this could have had some "effect * * * as between the Campbells and their business public * * *." It also indicates corporate ownership. And it is for the benefits arising from corporate operation that, in part at least, the corporation tax is laid. See, e.g., . *94 Furthermore, the action itself is significant. Its origin was left in some obscurity. The implication from the testimony was that the executor, decedent's son, had directed the marking on the trucks be changed when the corporation was formed. Failure to call him as a witness, although available, does nothing to minimize the implications arising from this circumstance, nor, in fact, add conviction to any part of petitioner's case. Finally, the suggestion that the corporate powers were not broad enough to encompass the entire business requires little comment. If some of the operations were ultra vires, it does not follow that they were not taxable. But the most complete disposition of the point lies in the fact, which petitioners concede, that "the percentage of business conducted during the relevant period other than transporting is not *95 disclosed by the record * * *" More specifically, we do not know, and probably could not be advised, what portion of the net income was, and what, if any, was not, intra vires. Since this is the basic issue, even as posed by petitioners, the material for its disposition to any extent in their favor is not available. Decisions will be entered for respondent. Footnotes
1. "* * * Independent executors receive property in trust for the benefit of creditors and devisees. * * *" . ↩
2. The corporation's organization papers likewise refer to the property as being owned by the estate. ↩
3. Petitioners' reply brief goes no further than to "agree with respondent that the business of the Estate could be continued by the Executrix-Executor. We also agree that the beneficiaries could demand a partition when all debts and expenses of administration are paid. The sale to their brother as of September 1, 1942, had the effect of partitioning the teaming and trucking assets of the Estate insofar as the three Campbell daughters were concerned."↩
4. All of the assets listed in the bills of sale from the daughters were in that category, and the original estate appraisal, in 1938, lists "Automobiles" and "Trucks" at a total of $16,835, by far the largest figure for any item of physical assets. The stipulation recites that "The trucking business was done with trucks and trailers * * *."↩