United States Court of Appeals,

Fifth Circuit.

No. 91–8342.

ADOBE RESOURCES CORPORATION, Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant–Appellant.

July 29, 1992.

Appeal from the United States District Court for the Western District of Texas.

Before GARWOOD and DeMOSS, Circuit Judges, and DUPLANTIER, District Judge.[*]

DeMOSS, Circuit Judge:

Adobe Resources Corporation (Adobe) filed suit seeking to carry back its net operating losses to prior tax years of one of its predecessor corporate groups in order to obtain a tax refund. After a jury trial, the district court entered judgment for Adobe allowing the refund, and the government appealed. We affirm.

I. FACTS

Adobe Oil and Gas, Inc. (Old Adobe) and Madison Resources, Inc. (Madison) were parent corporations of separate affiliated groups of corporations. The groups were engaged in the production of oil and natural gas, and the Old Adobe group was engaged in coal mining as well. Madison was the largest shareholder in Old Adobe, owning 29% of Old Adobe's common stock worth around $83 million.

On October 31, 1985, Madison and Old Adobe consolidated to form the taxpayer Adobe. On that date, the parties agreed that the fair market value of Old Adobe's outstanding stock (common and preferred) was approximately $288 million, and the fair market value of Madison's outstanding stock was approximately $215 million.

---

[*]District Judge of the Eastern District of Louisiana, sitting by designation.

To effect the consolidation, Madison's stockholders exchanged their shares for an equal number of shares of Adobe common stock. The process by which Old Adobe's stockholders converted their stock was more complicated. Old Adobe's coal subsidiaries were formed into a new corporation called AOI Coal Company (AOI). The outstanding shares of Old Adobe common stock, other than shares owned by Madison, were divided into two blocks: the exchange block, and the split-off block. Each share of the exchange block was converted into (i) .30 shares of Adobe common stock; (ii) .36 shares of Adobe convertible preferred stock; and (iii) .40 shares of Adobe preferred stock. Each share of the split-off block was exchanged for one share of AOI common stock. Each share of Old Adobe preferred stock was exchanged for .275 shares of Adobe preferred stock. The Old Adobe shares owned by Madison were cancelled.

After the consolidation, Adobe stock (common, preferred, and convertible preferred) had a total fair market value of approximately $391 million, and the AOI stock had a fair market value of approximately $40 million.

Adobe incurred large net operating losses in 1985, 1986, and 1987. In order to obtain a tax refund, it sought to carry back those losses as an offset against income earned by Old Adobe prior to consolidation.[1] Adobe filed an administrative claim seeking a refund, which was denied. It then filed this suit in district court. After a jury trial, in which the jury answered two special interrogatories, the district court entered judgement for Adobe in the amount of $14,123,479.[2]

## II. DISCUSSION

*A. Revenue Ruling 89–80*

Section 172 of the code allows a taxpayer who sustains a net operating loss in a particular

---

[1]The revenue ruling recognizing the carry back of net operating losses to a predecessor group following a consolidation was not issued until 1989, which was four years after the consolidation of Old Adobe and Madison. See Revenue Ruling 89–80, 1989–1 C.B. 273.

[2]This amount represents the claimed refund of $9,062,029, plus accrued interest.

year to carry that loss back or forward to other taxable years. A net operating loss carried back to a particular year is "allowed as a deduction for the taxable year." 26 U.S.C. § 172. Once carried back, the taxpayer is entitled to a refund for any excess tax paid in the prior years.

The relevant regulation to Adobe's refund claim is the "reverse acquisition" provision of Treasury Regulation § 1.1502–75(d)(3). That regulation provides that when one corporation acquires:

> substantially all the assets of the second corporation in exchange ... for stock of the first corporation, and the stockholders ... of the second corporation, as a result of owning stock of the second corporation, own ... more than 50 percent of the fair market value of the outstanding stock of the first corporation, then any group of which the first corporation was the common parent ... shall cease to exist as of the date of the acquisition, and any group of which the second corporation was the common parent ... shall be treated as remaining in existence (with the first corporation becoming the common parent of the group).

Treas.Reg. § 1.1502–75(d)(3)(i)(b).

When a "reverse acquisition" occurs under § 1.1502–75(d)(3), for purposes of determining whether to carry back net operating losses, the pre-acquisition tax years of the acquiring corporation "shall be treated as taxable years of the transferor corporation" and the pre-acquisition tax years of the transferor corporation "shall be treated as taxable years of the acquiring corporation." Treas.Reg. § 1.1502.75(3)(v)(b).

In 1989, Revenue Ruling 89–80 recognized the applicability of that regulation to the consolidation of parent corporations of separate affiliated groups into a new corporation. 1989–1 C.B. 273. The ruling held that net operating losses of the newly formed corporation could be carried back to tax years of the predecessor whose former stockholders owned more than 50 percent of the fair market value of the new corporation's stock immediately after the consolidation.[3] Rev.Rul.

---

[3]The situation presented in Revenue Ruling 89–80 was the consolidation of X and Y, each a common parent of an affiliated group, into newly formed corporation P, with the issuance of more than 50 percent of P stock to X shareholders. In that case, the ruling observed, P would be the

89–80, 1989–1 C.B. 273. Both parties agree that Revenue Ruling 89–80 applies, and that Adobe can carry back its net operating losses to either Old Adobe or Madison. Therefore, the sole issue for us to resolve, which is not answered by Revenue Ruling 89–80, is whether Old Adobe or Madison is the predecessor group whose former stockholders own more than 50% of the fair market value of Adobe's stock after consolidation. The key to resolving this seemingly simple issue lies in accounting for Madison's pre-consolidation ownership of Old Adobe stock.[4] Neither Revenue Ruling 89–80 nor Treas.Reg. 1.1502–75(d)(3) expressly deal with the possibility of cross ownership. We conclude that the fact that cross ownership is not discussed does not prevent the taxpayer from availing itself of the benefits of the "reverse acquisition" rules as applied to consolidations.[5]

---

"first corporation," since it had acquired substantially all of the assets of X and Y in exchange for P stock. The fact that P was a newly formed corporation would not change that result. Thus, the X group remains in existence (with P as the common parent), and previous tax years of corporations that were in the X group before consolidation are treated as tax years of the new group headed by P. X is not a "transferor corporation" to which carry back of net operating losses are prohibited under § 381(b)(3) of the Code. Thus, consolidated net operating losses of the P group may be carried back to prior tax years of the former X group. Consolidated net operating losses of the P group may not be carried back to prior tax years of the Y group.

[4]At trial, the district court submitted to the jury the following special interrogatories:

> 1. Find, from a preponderance of the evidence, the reasonable fair market value as of November 1 [after consolidation] that Madison received in shares, directly or indirectly, of Adobe Resources Corporation because of Madison's ownership of outstanding shares of Old Adobe.

> 2. Find from a preponderance of the evidence the reasonable fair market value as of November 1 [after consolidation] that all shareholders in Old Adobe (including Madison as a shareholder) received because of their ownership of outstanding shares of Old Adobe.

The jury returned answers of $83 million and $256 million. Those answers, however, are not helpful to resolving the problem of cross ownership because interrogatory two assumes that Old Adobe stock owned by Madison should be credited to Old Adobe stockholders in determining whether the stockholders of Old Adobe or Madison owned more than 50% of the fair market value of Adobe's stock after consolidation, which is exactly the question we are faced with on this appeal.

[5]Another subsection of Treas.Reg. 1.1502–75(d)(3)(ii), does provide a complicated mathematical formula for taking into account stock in the transferor corporation that was previously owned by the acquiring corporation. That provision, however, is not applicable in this case. If the acquiring corporation wishes to avail itself of that provision it must file a statement with the I.R.S. electing to have the provision apply, and it must have continuously owned at least 25% of the transferor corporation's stock for five years prior to the acquisition. Madison did not own its Old Adobe stock for five years prior to the consolidation.

The government contends that the former Old Adobe group cannot be the surviving entity because it does not meet the literal requirements of Revenue Ruling 89–80. In other words, former Old Adobe stockholders did not "own (immediately after the acquisition) more than 50 percent of the fair market value of the outstanding stock of ... [Adobe]." Rev.Ruling 89–80. The government contends that after the consolidation the former Madison stockholders owned over 55 percent ($217 million of $391 million) of the fair market value of Adobe's stock. According to the government, therefore, Adobe's losses can not be carried back against the pre-consolidation income of Old Adobe.

The fallacy in the government's contention is that it requires one to assume, illogically, that Madison agreed to cancel Madison's 29% ownership of Old Adobe stock, which was worth approximately $83 million without receiving any value in return.[6] If this had actually happened, then the net worth of Madison would have been reduced from the $215 million stipulated by the parties to $132 million; and the shareholders of Madison would have gotten a smaller amount of Adobe shares in exchange for their Madison shares. Obviously this did not occur. Rather, as part of the consolidation, the Old Adobe shares that were owned by Madison were cancelled, but in return the former Madison stockholders received the value of those cancelled shares reflected as a portion of the Adobe stock that they received in exchange for their Madison shares. Accordingly, the Adobe stock held by former Madison stockholders after consolidation included $83 million as compensation for Madison's holdings of Old Adobe stock prior to consolidation. For purposes of determining whether to carry back Adobe's net operating losses to Old Adobe or Madison under Revenue Ruling 89–80, then, that $83 million should be added to the $173 million in Adobe shares held by former Old Adobe shareholders other than Madison. Thus, in the final analysis, former Old Adobe stockholders own $256 million ($173 million + $83 million) worth of Adobe stock, as compared to former

_____

[6]The holes in the government's reasoning become apparent if we assume that Madison made an in kind distribution of its Old Adobe shares to its [Madison's] stockholders prior to consolidation. Then there could be no dispute that Adobe's net operating losses should be carried back to Old Adobe.

Madison stockholders who own $135 million ($218 million ! $83 million).[7] Consequently, Adobe's net operating losses should be carried back to Old Adobe, not Madison.

*B. Substance Over Form*

The government asserts, and rightly so, that the taxpayer can not argue substance over form, except when necessary to prevent unjust results. *Spector v. Comm'r of Internal Revenue Serv.,* 641 F.2d 376 (5th Cir.1981) *cert. denied,* 454 U.S. 868, 102 S.Ct. 334, 70 L.Ed.2d 171 but see contra *Weinert's Estate v. Comm'r of Internal Revenue Serv.,* 294 F.2d 750, 755 (5th Cir.1961). Accordingly, the government contends that only by elevating substance over form, can one reach the conclusion that Old Adobe stockholders owned more than 50% of the fair market value of Adobe's stock after consolidation. The government's contention, however, misses the point. Here, the taxpayer need not resort to substance over form to prevail. The plan of consolidation provided that Madison's stockholders would receive one share of Adobe stock in exchange for each share of Madison stock, and that the Old Adobe shares that were owned by Madison would be cancelled.[8] One would not have been done without the other. If Madison had not cancelled its shares of Old Adobe, then Adobe would have issued Madison's stockholders a different quantity of shares of its stock. Therefore, in form and in substance Old Adobe qualified as the predecessor group against which Adobe could carry back its net operating losses under Revenue Ruling 89–80.

---

[7]As noted, prior to consolidation, Madison had an agreed value of $215 million and Old Adobe had an agreed value of $288 million. As a result of the consolidation, Madison's stockholders received a total of $218 million of Adobe stock and Old Adobe stockholders received a total of $296 million of Adobe and AOI stock, which closely approximates the respective agreed values of $215 million and $288 million. Subtracting the $40 million reflecting the AOI spin-off from the total of $296 million leaves us with a final figure of $256 million, which is composed of the $173 million in Adobe stock received by former Old Adobe stockholders other than Madison, and the $83 million in Adobe stock received by former Madison stockholders, which reflects Madison's ownership of Old Adobe stock. Therefore making allowance for cross-ownership, former Old Adobe stockholders end up owning $256 million, approximately 65% of the fair market value of Adobe stock, and former Madison stockholders end up owning $135 million, approximately 35% of the fair market value of Adobe stock.

[8]The terms of Madison's and Old Adobe's agreement provided that "[u]pon consummation of the consolidation, ... 4,585,062 shares of Adobe common stock held by Madison ... will be cancelled." Joint Proxy Statement/Prospectus at p. 19–20 (Sept. 23, 1985).

When the deal was structured between Madison and Old Adobe, Revenue Ruling 89–80 had not been issued.  At that time, no specific examples existed applying the "reverse acquisition" rule of § 1.1502–75(d)(3) to consolidations.  The government concedes that Revenue Ruling 89–80 retroactively applies to this 1985 consolidation.  Ordinarily, the taxpayer must comply with the specifics of a regulation or revenue ruling to claim a deduction.  *Comm'r of Internal Revenue Serv. v. Nat'l Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974).  We conclude, however, that it is only fair to give the benefits of the deduction to the taxpayer in this case because if Revenue Ruling 89–80 had been issued at the time the consolidation was being negotiated, the taxpayer could have easily structured the consolidation to achieve literal compliance with the regulation by having Madison distribute its Old Adobe shares to its (Madison's) shareholders before consolidation.

In the circumstance of cross-owned stock between two corporations who were each common parents of separate affiliated groups and who consolidate into a new corporate entity, it is inherent that the owner of the cross owned stock will not survive the consolidation;  and will not appear, as such, on the list of shareholders of the newly consolidated corporate entity.  A similar truism exists in that the new consolidated corporate entity does not exist prior to consolidation;  but the Revenue Service had no difficulty in issuing Rev.Ruling 89–80 expressly to extend the benefits of the "reverse acquisition" regulation, which assumes the merger of one of two previously existing corporate entities into the other, to the newly formed consolidated entity.  Furthermore, in the cross-owned stock situation the cross-owned stock is an asset of its owner, contributing to the net worth and value of such owner's own stock;  but the cross-owned stock is simply outstanding shares on the books of the issuer thereof, participating pro rata with all other outstanding shares in the net worth of the issuer and any premium added thereto by market forces.  Under the facts of this case and solely for the purpose of resolving this dispute we hold that tracing of the ownership by Madison of shares in Old Adobe as an identifiable component of the shares of Adobe issued to Madison's shareholders is consistent with the determination called for by Rev.Ruling 89–80;  and results in a finding that former

shareholders of Old Adobe owned more than 50% of the value of the newly issued shares of Adobe and that therefore Old Adobe is the surviving corporate entity for purposes of the tax carry back sought in this case.

For the foregoing reasons the judgment of the district court is AFFIRMED.