JOHN R. BROWN, Circuit Judge:
 

 Begin the Bovine
 

 This controversy is an offshoot of the bankruptcy proceedings of H. Roger Lawler, individually, and several related enterprises. At stake are the valuable bleached bones of the Lawler Cattle Company (L.C. C.), an ill-fated venture which amassed some two million dollars in losses in its approximately. one and one-half years of operation. In this separate suit, instituted by trustee in bankruptcy L.E. Creel III, the bankruptcy court ruled that L.C.C. was Roger Lawler’s “alter ego” for “all purposes.” The district court affirmed on the ground that the bankruptcy court’s findings were not clearly erroneous. The United States, which has filed twelve million dollars worth of tax claims against Roger Lawler, argues that for taxation purposes L.C.C.'s corporate identity should be respected and the cattle operation losses attributed to the corporation rather than to Lawler personally. We agree. Accordingly, we reverse the district court and the bankruptcy court and remand.
 

 Lawler Cattle Company was incorporated in Nevada in June 1973. The bankruptcy court found, and it is undisputed, that L.C. C.’s initial and only capital contribution, $1,000, was advanced by Roger Lawler and that the corporation was formed primarily for the purpose of managing Roger Lawler’s ranch and cattle. After its formation, L.C.C. was substituted for Roger Lawler as debtor on a promissory note to the First National Bank of Nevada and as borrower on the agreement providing the Bank with a security interest in the cattle to be purchased. Between August 31,1973 and February 13, 1974, L.C.C. procured loans from the Bank totaling in excess of 3.4 million dollars.
 
 [1]
 
 During its brief and catastrophic existence, L.C.C. employed as many as 24 people.
 

 As the cattle purchased were not suited to the desert environment of the Nevada
 
 *577
 
 ranch, L.C.C. incurred severe losses. It filed a corporate tax return for its fiscal operating year 1973, showing a net operating loss of $2,207,471.42.
 
 [2]
 
 L.C.C. ceased operations sometime in 1974.
 

 The Magnificent Chapter Seven
 

 On January 9, 1976, in Nevada, involuntary petitions were filed under Chapter YII of the old Bankruptcy Act against Roger Lawler and Lawler Land and Cattle Company.
 
 [3]
 
 The petitions were contested and venue transferred to the northern district of Texas, where the United States filed its proofs of claim for approximately twelve million dollars in income taxes due from Roger Lawler individually. Roger Lawler consented to adjudication. Thereafter, the appointed trustee, Creel, successfully applied for orders declaring Lawler Corporation, Lawler Family Trust and Lawler Management Company to have been from their inception alter egos of Roger Lawler for all purposes. On June 20, 1979, the bankruptcy court issued such an order regarding L.C.C. After it was determined that L.C.C. was not even a party and hence was not properly before the court, the trustee instituted the present proceeding seeking to have L.C.C. declared Roger Lawler’s alter ego. The government filed a motion for dismissal arguing that the order should not be granted insofar as it would require that L.C.C.’s corporate entity be disregarded for taxation purposes. On April 28, 1980, after hearing, the bankruptcy court (1) denied the United States’ motion and decreed that
 

 (2) Lawler Cattle Co. is now, and at all times since its inception has been, the alter ego of H. Roger Lawler for all purposes; and
 

 (3) The assets of Lawler Cattle Co. as of January 9, 1976 were the assets of H. Roger Lawler, the Debtor herein, subject to the payment of the claims of all creditors of the Debtor herein.
 
 [4]
 

 
 *578
 
 The district court affirmed in November, 1981.
 

 The Eyes of Taxes
 

 The sole issue before us is whether the district court was in error in declaring L.C.C. to have been Roger Lawler’s alter ego
 
 for all purposes,
 
 and in declaring the assets of L.C.C. to have been the assets of Roger Lawler, insofar as that order required the corporation to be disregarded for tax purposes. The government has never challenged that aspect of the alter ego determination which allows L.C.C.’s creditors to reach Roger Lawler’s individual assets, whatever those may be. That portion of the order stands. Because L.C.C. clearly meets the standard enunciated by the Supreme Court in
 
 Moline Properties, Inc. v. Commissioner of Internal Revenue,
 
 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943), however, we reverse the bankruptcy court’s order insofar as it disregards L.C.C.’s corporate identity for income tax purposes.
 

 In
 
 Moline Properties,
 
 the Court stated, The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator’s personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity, [citations omitted] 319 U.S. at 438-39, 63 S.Ct. at 1133-34, 87 L.Ed. at 1502.
 

 Clearly, under
 
 Moline Properties,
 
 L.C.C. is a separate taxable entity. Although only one of the two parts of the
 
 Moline Properties
 
 test need be satisfied, it is patently obvious that L.C.C. was both organized for a business purpose and actually carried on business activity. As the bankruptcy court itself found, L.C.C. was formed “primarily for the purpose of managing the ranch and the cattle owned by H. Roger Lawler.” This business purpose alone is sufficient to satisfy the
 
 Moline Properties
 
 standard. Moreover, it is undisputed that L.C.C. obtained loans of over $3,000,000, employed a number of people, bought and sold cattle,
 
 [5]
 
 
 *579
 
 executed promissory notes, filed tax returns, negotiated for the purchase of land, and defended itself in a lawsuit.
 
 [6]
 
 Plainly, L.C.C. was both organized for a business purpose and actually carried on business activity.
 

 The Trustee steers our attention toward the Supreme Court’s observation in
 
 Moline Properties
 
 that
 

 In general, in matters relating to the revenue, the corporate form may be disregarded where it is a sham or unreal. In such situations the form is a bald and mischievous fiction, [citations omitted]
 

 319 U.S. at 439, 63 S.Ct. at 1134, 87 L.Ed. at 1503.
 

 The Trustee argues that “alter ego” and “sham” are synonymous and that therefore — because of the bankruptcy court’s finding of alter ego — L.C.C.’s corporate form must be disregarded “as a bald and mischievous fiction.” The fact is, however, that in the corporate context, “alter ego” and “sham” are not synonymous, as the case law illustrates. A sham corporation may be one established for no valid purpose, such as a corporation formed solely for the purpose of escaping taxation,
 
 see National Carbide,
 
 336 U.S. at 437, n. 20, 69 S.Ct. at 734, n. 20, 93 L.Ed. at 788, or defrauding creditors, see
 
 Paymer v. Commissioner of Internal Revenue,
 
 150 F.2d 334 (2d Cir.1945). As the Supreme Court pointed out in
 
 National Carbide,
 

 [The Court of Appeals] held that under our decisions, when a corporation carries on business activity the fact that the owner retains direction of its affairs down to the minutest detail, provides all of its assets and takes all of its profits can make no difference tax-wise.... The result reached by the Court of Appeals is clearly required by our later decisions. 336 U.S. at 431-32, 69 S.Ct. at 731, 93 L.Ed. at 785.
 

 Clearly such a corporation might be held to be an alter ego for the purpose of piercing the corporate veil and allowing the corporate creditors to reach the assets of the individual.
 
 [7]
 
 So long as the corporation meets the test set forth in
 
 Moline Properties,
 
 however, it remains a separate taxable entity. As the Court of Claims expressed it in
 
 Harrison Property Management Co., Inc. v. United States,
 
 475 F.2d 623, 626 (Ct.Cl.1973),
 

 Where individuals adopt the corporate form for purposes of their own, the choice of the advantages of incorporation to do business requires ‘the acceptance of the tax disadvantages.’
 
 [Moline Properties,
 
 319 U.S. at 439, 63 S.Ct. at 1134, 87 L.Ed. at 1503] It is immaterial that the shareholders remain the beneficial owners of the property transferred to the company, or that the latter’s policies and day-to-day activities are determined, not as decisions of the corporation, but by the owners acting individually.
 
 National Carbide Corp. v. Commissioner, supra,
 
 336 U.S. at 433-34, 69 S.Ct. at 732;
 
 Tomlinson v. Miles, supra,
 
 316 F.2d at 714;
 
 Carver v. United States, supra,
 
 412 F.2d [233] at 239, 188 Ct.Cl. [202] at 212-13. By the same token, it does not matter that the corporation is regarded by its owners as a simple ‘dummy’.
 
 National Carbide Corp.
 
 
 *580
 

 v. Commissioner, supra,
 
 836 U.S. at 433, 69 S.Ct. at 732;
 
 Love v. United States, supra,
 
 96 F.Supp. [919] at 922, 119 Ct.Cl. [384] at 405. The controlling tests, ignoring the fact that the corporation is substantially the
 
 alter ego
 
 of the stockholders, concentrate on the reasons why the ‘dummy’ was created, and what it actually does, [emphasis in original]
 

 See also Evans v. Commissioner of Internal Revenue,
 
 557 F.2d 1095 (5th Cir.1977).
 

 The trustee argues that
 
 Moline Properties
 
 is built on the equitable principle that a taxpayer who chooses the corporate form must accept the disadvantages as well as the advantages of that form.
 
 See
 
 319 U.S. at 439, 63 S.Ct. at 1134, 87 L.Ed. at 1503. That principle, he argues, is not relevant to this situation in bankruptcy, where respecting the corporate entity may preclude L.C. C.’s losses from being attributed to Roger Lawler personally and thus reduce the assets available to Roger Lawler’s creditors, other than the government. We do not believe, however, that equity calls for the sudden abandonment of a corporation’s independently taxable status once a bankruptcy petition is filed. Indeed, equity argues for the corporation to be treated consistently with the principles of taxation which governed its formation and existence. We are convinced that the
 
 Moline Properties
 
 test for determining whether a corporation is a separate taxable entity applies to this situation.
 

 The trustee argues also that L.C.C. is exempt from taxation under the exception for the income of “true corporate agents”, articulated in
 
 National Carbide.
 

 What we have said does not foreclose a true corporate agent or trustee from handling the property and income of its owner-principal without being taxable therefor. Whether the corporation operates in the name and for the account of the principal, binds the principal by its actions, transmits money received to the principal, and whether receipt of income is attributable to the services of employees of the principal and to assets belonging to the principal are some of the relevant considerations in determining whether a true agency exists. If the corporation is a true agent, its relations with its principal must not be dependent upon the fact that it is owned by the principal, if such is the case. Its business purpose must be the carrying on of the normal duties of an agent.
 

 336 U.S. at 437, 69 S.Ct. at 734, 93 L.Ed. at 788.
 

 We are skeptical of the claim that L.C. C.’s relations with Roger Lawler were independent of Lawler’s ownership and control of the corporation, as required by
 
 National Carbide.
 
 Indeed, the bankruptcy court’s finding that L.C.C. was Roger Lawler’s alter ego almost necessarily forecloses that possibility. As this issue was neither raised before nor decided by the court below, however, we need not and do not decide whether L.C.C. is exempt from taxation as Roger Lawler’s agent.
 
 [8]
 

 Finally, the trustee points to §§ 671-77 of the Internal Revenue Code, 26 U.S.C. §§ 671-77, which deal with the circumstances under which trust income deductions and credits may be attributed to trust grantors for purposes of taxation. Under these sections of the Internal Revenue Code, a grantor’s retention of any of several enumerated powers over a trust may cause trust assets to be attributed to the grantor for tax purposes. The trustee argues that, by analogy, an individual’s control of the assets of an alter ego corporation must call for the abandonment of the corporation as a separate taxable entity, because the individual’s control of the corporation is likely to be far greater than the individual’s control over the trusts described in the Internal Revenue Code.
 

 We find no merit in either the analogy or the argument. Sections 671-77 of the In
 
 *581
 
 ternal Revenue Code — which deal exclusively with trusts — in no way reflect the manner in which the assets of corporations should be treated for income tax purposes.
 
 Moline Properties,
 
 not irrelevant sections of the Internal Revenue Code, sets forth the test for deciding when the corporate entity is to be disregarded for income tax purposes. So long as the purpose of incorporation “is the equivalent of business activity or is followed by the carrying on of business by the corporation,” the corporate identity is to be respected and maintained.
 

 Happy Trials
 

 The bankruptcy court erred in determining that L.C.C.’s assets were to be considered those of Roger Lawler individually, insofar as that order required the disregard of L.C.C. as an independent taxable entity. The district court erred in affirming the bankruptcy court’s order in this respect.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . Apparently, the outstanding debt at any one time never exceeded $2,234,886.65.
 

 [2]
 

 . Approximately 1.6 million dollars of the loss was from the sale of goods — the loss from the sale of the cattle. The remainder was primarily attributable to ranch expenses and interest payments.
 

 [3]
 

 . Lawler Cattle Company and Lawler Land and Cattle Company are not the same entity. L.C.C. is the corporation whose taxable status is at issue here, while L.L.C.C. apparently was simply a company name under which Roger Lawler conducted some business.
 

 [4]
 

 . The court’s complete findings and conclusions are set forth below:
 

 1. On June 4, 1973, Lawler Cattle Co. was formed as a Nevada corporation. The initial capital contribution of $1,000.00 was advanced by H. Roger Lawler. No other capital contributions were ever made.
 

 2. Lawler Cattle Co. was formed primarily for the purpose of managing the ranch and the cattle owned by H. Roger Lawler. Lawler Cattle Co. was to receive a 15 percent net profits interest in consideration for its management activities.
 

 3. Lawler Cattle Co. managed only those cattle owned by H. Roger Lawler and never owned any cattle of its own.
 

 4. On June 4, 1973, H. Roger Lawler was appointed President of Lawler Cattle Co. He additionally assumed the responsibilities of general manager on January 2, 1974.
 

 5. At all times since the formation of Lawler Cattle Co., H. Roger Lawler has completely dominated, controlled and managed the assets and the business transactions and affairs of Lawler Cattle Co., treating its business and properties as his own, and operating it as an instrumentality of and agent for himself and for his own purposes in total disregard of the corporate form.
 

 6. The verified schedules of H. Roger Lawler filed herein list debts of Lawler Cattle Co. as being debts of H. Roger Lawler, and include Lawler Cattle Co. as a name under which H. Roger Lawler has conducted his business.
 

 7. The creditors of Lawler Cattle Co., in extending substantial credit to Lawler Cattle Co., were of the belief that Lawler Cattle Co. was H. Roger Lawler and that the credit extended was, in truth and in fact, extended to H. Roger Lawler.
 

 8. Such creditors have filed claims in this proceeding and have participated herein as creditors of H. Roger Lawler. To treat Lawler Cattle Co. as an entity separate and distinct from H. Roger Lawler would perpetrate a fraud upon those creditors who extended credit to Lawler Cattle Co.
 

 9. The assets of Lawler Cattle Co. were insufficient to provide adequate security for its indebtedness to the First National Bank of Nevada.
 

 10. Lawler Cattle Co. was undercapital-ized for its purposes at its inception and at all times thereafter.
 

 11. Lawler Cattle Co. is now, and at all times since its inception has been, the alter ego of H. Roger Lawler.
 

 
 *578
 
 12. There is no evidence in the record that the Plaintiff’s purpose in filing his Complaint was to acquire the net operating loss of Lawler Cattle Co. for the benefit of H. Roger Lawler.
 

 13. The United States has filed proofs of claim in this proceeding.
 

 14. This Court has jurisdiction to grant the relief prayed for by the Plaintiff in his Complaint.
 

 IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED that:
 

 (1) The Motion to Dismiss and Response of United States of America be, and the same hereby is, in all things, overruled and denied; and
 

 (2) Lawler Cattle Co. is now, and at all times since its inception has been, the alter ego of H. Roger Lawler for all purposes; and
 

 (3) The assets of Lawler Cattle Co. as of January 9, 1976 were the assets of H. Roger Lawler, the Debtor herein, subject to the payment of the claims of all creditors of the Debtor herein.
 

 [5]
 

 . The bankruptcy court found that “Lawler Cattle Co. managed only those cattle owned by H. Roger Lawler and never owned any cattle of its own.” It is clear from the record, however, that L.C.C. held record title to at least some of the cattle. The parties disagree as to whether L.C.C. or Roger Lawler had legal and equitable ownership of the livestock. Past cases reveal that the answer to the question of who has legal or equitable ownership of some or all corporate assets does not determine a corporation’s status for taxation purposes.
 

 The taxpayers take the position that the mere carrying on of business by the corporation, to satisfy this requirement of the Moline Properties case, must be business relating to property to which it has title, either legal or equitable. They contend that this corporation was the holder of a mere naked record title with neither legal nor equitable ownership of the property and that therefore such business as was earned on by the corporation does not fall within the formula that is above set out. We find no such limitation in the formula adopted by the Supreme Court in the Moline Properties case.
 

 Tomlinson v. Miles,
 
 316 F.2d 710, 714 (5th Cir.1963).
 
 See also Evans v. Commissioner of Internal Revenue,
 
 557 F.2d 1095 (5th Cir.1977);
 
 Harrison Property Management Co., Inc. v. United States,
 
 475 F.2d 623 (Ct.Cl.1973).
 

 As we pointed out in
 
 Tomlinson,
 
 the
 
 Moline Properties
 
 Court reached its decision that the corporation involved was a separate taxable
 
 *579
 
 entity “notwithstanding the findings of the Tax Court that
 
 full beneficial ownership
 
 of the property there involved was in the sole stockholder.” [emphasis in original]
 
 Id.,
 
 at 714,
 
 citing National Carbide Corporation v. Commissioner of Internal Revenue,
 
 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779 (1949).
 

 [6]
 

 .In September 1973, Vice President Harry Conley signed a contract for the purchase of ranch land on behalf of L.C.C. In June 1974, L.C.C. answered to complaint number 295308, Nevada Supplement Co. v. Lawler Cattle Co., filed against it in the Second Judicial District Court of Nevada, County of Washoe.
 

 [7]
 

 .See, e.g., Holmes v. Clow,
 
 533 S.W.2d 99, 101-02 (Tex.Civ.App.1976):
 

 In order to warrant piercing the corporate veil, the courts generally require the presence of one or more of the following factual situations: (1) evidence that the corporate entity amounts to a fraud, promotes injustice, or it is relied on to justify a wrong, (2) that it was inadequately capitalized, (3) that an individual controls and manages the entity in such a manner that it becomes its alter ego, and (4) that the corporate formalities were not adhered to by the corporation. Each case must rest on its special facts.
 

 [8]
 

 . The bankruptcy court found that Lawler operated L.C.C. “as an instrumentality of and agent for himself and for his own purposes....” Nothing in the record indicates that this use of the word “agent” was intended as a finding that L.C.C. was a corporate agent in the sense referred to in
 
 National Carbide.