**In re John Carl FRAZIER, Debtor.**

**Bankruptcy Nos. C–87–2461 AJZ, 1–74–796.**

United States District Court, N.D. California.

Oct. 2, 1987.

■■■■■■■■■■■■

Joseph P. Russoniello, U.S. Atty., Jay R. Weill, Asst. U.S. Atty., Chief, Tax Div., David L. Denier, Asst. U.S. Atty., San Francisco, Cal., for appellant U.S.

Philip M. Arnot, Inc., Eureka, Cal., for trustee and appellee William B. Grover.

## ORDER

ZIRPOLI, Senior District Judge.

The issue in this bankruptcy appeal is whether the business known as Markley Corporation should be treated as a taxable entity separate from the debtor, John Carl Frazier. If so, Frazier could not claim losses from that business on his individual income tax returns for 1973 and 1974. It is undisputed that Frazier never formally transferred any assets to Markley Corporation and that no stock was ever issued. The bankruptcy court held that Markley Corporation was not a separate legal entity, but was merely one of many "dba's" used by Frazier. The United States' claim for income tax deficiencies caused by Frazier's deduction of "Markley Corporation's" business losses was therefore disallowed. The United States appeals this disallowance, arguing that the Bankruptcy Court misapplied the law.

## STANDARD OF REVIEW

Mixed questions of law and fact, where the reviewing court is "require[d] to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles are classified as one of law and reviewed *de novo.*" *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Fed.R.Civ.P. 52(a); Bankruptcy Rule 9014, 7052. Application of the Internal Revenue Code to a given set of facts is therefore subject to *de novo* review. *Katherine Lynn McCarthy Trust v. Commissioner of Internal Revenue,* [1] 817 F.2d 558, 559 (9th Cir.1987); *Wolfe v. United States,* 798 F.2d 1241, 1243 n. 1 (9th Cir. 1986) (application of alter ego doctrine to permit collection of corporate tax from individual shareholder is question of law subject to *de novo* review). Since the only issue in this bankruptcy appeal, whether Markley Corporation should be treated as a taxable entity separate from the debtor, requires an application of law to relatively settled facts, it is subject to *de novo* review.

## THE MOLINE PROPERTIES' TEST

The test for determining whether a corporation should be treated as a separate taxable entity was set out in *Moline Properties, Inc. v. C.I.R.,* 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943).

The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business activity, the corporation remains a separate taxable entity.

*Id.* at 438–39, 63 S.Ct. at 1133–34. The taxpayer-corporation in *Moline Properties* sought to treat a taxable gain as income taxable to its sole stockholder. Here, the taxpayer-"sole stockholder" seeks to treat potentially deductible losses as individual, rather than corporate, losses. Although this case is the mirror image of *Moline Properties, see* Bankruptcy Court Order at 4:7–10, both cases involve a taxpayer's attempt to disregard the corporate entity for tax purposes.

The Fifth Circuit recently applied *Moline Properties* to a situation very similar to that presented here. *United States v. Creel,* 711 F.2d 575 (5th Cir.1983), *cert.*

---

**1.** All subsequent references to the Commissioner of Internal Revenue, whether in case names or in the memorandum text, will use the abbreviation "C.I.R."

*denied,* 464 U.S. 1044, 104 S.Ct. 714, 79 L.Ed.2d 177 (1984). *Creel* was also a bankruptcy proceeding. The debtor created a corporation for the purpose of managing his cattle ranch. The initial and only capital contribution provided to the corporation was $1000 advanced by the debtor. The corporation was substituted for the individual as the debtor on a promissory note and as borrower on an agreement providing the creditor with a security interest in the cattle to be purchased. The corporation procured bank loans and hired employees in its own name. *Id.* at 576. It also held record title to at least some of the cattle. *Id.* at 577 n. 4, 578 n. 5. The bankruptcy court found that the corporation was the alter ego of the individual debtor and disregarded the corporate entity for all purposes, including income tax purposes. *Id.* at 578.

The Fifth Circuit reversed, noting that "clearly [the corporation] is a separate taxable entity," as it met both parts of the disjunctive *Moline Properties* test. *Id.*

> [I]t is patently obvious that [the corporation] was both organized for a business purpose and actually carried on business activity. As the bankruptcy court itself found, [it] was formed "primarily for the purpose of managing the ranch and the cattle owned by [the individual debtor]." This business purpose alone is sufficient to satisfy the *Moline Properties* standard. Moreover, it is undisputed that [the corporation] obtained loans of over $3,000,000, employed a number of people, bought and sold cattle, executed promissory notes, filed tax returns, negotiated for the purchase of land, and defendant itself in a lawsuit. Plainly, [it] was both organized for a business purpose and actually carried on business activity.

*Id.* at 578–79 (footnotes omitted).

The Fifth Circuit specifically rejected the argument that an alter ego corporation must be treated as a sham for tax purposes: The *Creel* corporation was a separate taxable entity, even though it was an alter ego for the purpose of piercing the corporate veil and allowing the corporate creditors to reach the assets of the individual shareholders. *Id.* at 579–80 (citing

*Harrison Property Management Co., Inc. v. United States,* 475 F.2d 623, 626 (Ct.Cl. 1973)).

The Fifth Circuit also specifically rejected the argument that the equitable principles underlying *Moline Properties* have no application to a bankruptcy proceeding. A corporation which meets the *Moline Properties* test must be treated as a separate taxable entity, even if that treatment precludes corporate losses from being attributed to the stockholder/debtor personally, thus reducing the assets available to nongovernmental creditors. *Id.* at 580.

Here, Markley Corporation was created for the purpose of the "manufacture and construction of and distribution of mobile homes and modular buildings." Exh. A–1 at 1 (Markley Corporation Articles of Incorporation). It was also formed to protect the personal assets of Frazier, its incorporator, and to permit the involvement of new investors. Transcript at 34:9–35:6. The corporation executed a note, a security agreement and a financing statement in order to borrow $22,000 from the Bank of America. Frazier, acting as President of Markley Corporation, amended three prior financing statement to reflect that Markley Corporation replaced J. Carl Frazier, Jr. as the debtor. The corporation filed statements and returns with local, state and federal tax authorities and was involved in litigation in its own name. Supplies were ordered and mobile homes sold using Markley Corporation order forms. Transcript at 26:18–27:17. With the exception of the lack of any formal asset transfer to Markley Corporation, its purposes and subsequent activity were virtually indistinguishable from those deserving of a separate taxable status in *Creel.*

The bankruptcy court's refusal to follow *Creel* was error. *In re Bruce Farley Corp.,* 612 F.2d 1197 (9th Cir.1980), is not to the contrary. The Ninth Circuit's refusal to implement affirmative equitable relief is not inconsistent with *Creel's* refusal to reject the independently taxable status of the corporate entity. Both courts declined to upset the status quo:

[E]quity [does not] call for the sudden abandonment of a corporation's independently taxable status once a bankruptcy petition is filed. Indeed, equity argues for the corporation to be treated consistently with the principles of taxation which governed its formation and existence.

*Creel,* 711 F.2d at 580.

*Creel* is not only consistent with *Bruce Farley,* but has also been cited with approval by the Ninth Circuit. *See Wolfe v. United States,* 798 F.2d 1241, 1243, *as amended,* 806 F.2d 1410 (9th Cir.1986) (alter ego "corporation" still liable for corporate taxes). Although *Wolfe* was an action for a tax refund, not a bankruptcy case, its citation of *Creel* without adverse comment cannot be ignored. Indeed, *Wolfe* noted that "[t]he Government stands in a position *analogous to any creditor seeking to collect debts owed by the corporation," id.* at 1243. There is no basis for the bankruptcy court's assumption that the Ninth Circuit would reject *Creel's* application of the *Moline Properties'* test in the bankruptcy context as clearly erroneous merely because the *Creel* opinion is "flippant." *See* Bankruptcy Court Order at 6:13–18.

*Creel* is not distinguishable "on the basis that the corporation involved [in the Fifth Circuit case] actually did business in its own name." *Id.* at 6:10–13. To the extent that this statement is a finding that Markley Corporation did no business in its own name, the finding must be rejected as clearly erroneous. As the bankruptcy court itself found, "the record is replete with numerous documents in which the debtor that the ... business was owned by and operated by Marley Corporation." *Id.* at 2:16–18. *See also id.* at 2:6–15.

Frazier's failure to formally transfer assets to Markley Corporation will not defeat separate tax status. The formal transfer of assets to the corporate entity and issuance of stock to the "shareholder" is not a prerequisite to the existence of independent taxable status for the corporation. *Creel,* 711 F.2d at 578 and n. 5. "The answer to the question of who has legal or equitable ownership of some or all corporate assets does not determine a corporation's status for taxation purposes." *Id.* at n. 5 (citing cases). The *Moline Properties* test focusses on business purpose and business activity, not the formalities of title. Markley Corporation was formed for legitimate business purposes *and* conducted business after its (defective) formation. Although Frazier never formally conveyed title to the property or other assets, those in charge of the business of the corporation had actual physical possession and control of this property. This is sufficient under *Moline Properties. See L.T. Campbell, Inc. v. C.I.R.,* 4 T.C.M. 919 (1945), *aff'd,* 159 F.2d 629 (5th Cir.1947). Since "acts can speak louder than records,—or their absence," the corporate entity will be recognized for tax purposes even though no property was formally transferred and no shares formally issued. *Id.* at 923.

Although the court finds *Creel's* application of the *Moline Properties'* test to bankruptcy proceedings persuasive and a correct statement of law, it is sympathetic to the bankruptcy court's obvious frustration over this rule. As one dissenting judge has remarked,

[This] is another application of an anomalous principle under which the taxpayer always loses. If the substance of the transaction favors the Government, we look to substance (which we should); if it favors the taxpayer, we ignore it and look to form.

*Elot H. Raffety Farms, Inc. v. United States,* 511 F.2d 1234, 1240 (8th Cir.1975) (Gibson, C.J., dissenting). The answer to this frustration is found in the rule that "a taxpayer may adopt any form for the conduct of business and that such form cannot be ignored merely because it results in tax savings." *Noonan v. C.I.R.,* 52 T.C. 907 (1969).

Accordingly,

IT IS ORDERED that the bankruptcy court's order disallowing the claim of the Internal Revenue Service is reversed. Markley Corporation must be treated as a separate taxable entity even though Frazier never formally transferred assets or received stock because it was formed for

legitimate business purposes and conducted business in its own name. The case is remanded so that the bankruptcy court may consider any other objections the trustee might properly raise to this claim of tax deficiency.