**In re Kevin COLEMAN and Kevin Coleman Construction, Inc., Debtors.**

**No. 07–00515–NPO.**

United States Bankruptcy Court, S.D. Mississippi.

July 2, 2009.

---

**2.** *McDow v. Korfonta,* No. 08–16675–SSM, A.P. No. 09–01228–SSM.

Craig M. Geno, Melanie T. Vardaman, Harris Jernigan & Geno, PLLC, Ridgeland, MS, for Debtors.

Ronald H. McAlpin, UST, Jackson, MS, for U.S. Trustee.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT FILED BY THE UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE

NEIL P. OLACK, Bankruptcy Judge.

There came on for consideration the United States' Motion for Summary Judgment (the "Motion") (Dkt. No. 268), the Statement of Undisputed Material Facts (the "IRS Statement") (Dkt. No. 268), the Memorandum (the "IRS Memorandum") (Dkt. No. 269), and the Reply (the "Reply") (Dkt. No. 281) filed by the United States of America, Internal Revenue Service (the "IRS"), and the Debtor's Answer and Response to United States' Motion for Summary Judgment (the "Response") (Dkt. No. 277), the Debtor's Response to the Statement of Undisputed Material Facts (the "Response to the IRS Statement") (Dkt. No. 278), and the Debtor's Memorandum Brief (the "Debtor's Memorandum") (Dkt. No. 279) filed by Kevin Coleman (the "Debtor"), in the above-styled chapter 11 proceeding. Craig M. Geno represented the Debtor, and Laura M. Conner represented the IRS. Having reviewed the above referenced pleadings and all the exhibits attached thereto, together with other pleadings on file and the briefs submitted by the parties, the Court finds that there is no genuine issue as to

any material fact and that the IRS is entitled to a judgment as a matter of law. Accordingly, the Motion should be granted for the reasons set forth more fully below.

#### Jurisdiction

This Court has jurisdiction over the subject matter of and the parties to this proceeding. This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(B). Notice of the Motion was proper under the circumstances.

#### Facts

There are no genuine issues with respect to the following material facts:

1. In 2001, the Debtor incorporated Kevin Coleman Construction, Inc. ( "KCC") in the State of Mississippi for the purpose of performing certain construction work. The Debtor is the president and sole shareholder of KCC. (Aff. of Debtor, Ex. A to Response; Ex. A to IRS Statement).

2. On behalf of KCC, Debtor signed and caused to be filed Corporate Annual Reports with the Mississippi Secretary of State during the years of KCC's existence, beginning in 2001 and including the relevant years 2005 and 2006. (Ex. F to IRS Statement).

3. The Debtor filed federal individual income tax returns separate and apart from KCC, which filed its own federal corporate income tax returns during the years of its existence, including the relevant time period. (Exs. C, D, and E to IRS Statement).

4. In separate federal income tax returns, the Debtor and KCC both treated withdrawals by the Debtor from KCC's corporate funds in the amounts of $150,780 in 2005 and $277,486 in 2006 as loans, rather than as dividend income. (Debtor's Objection to Claim of the Internal Revenue Service) (the "Debtor's Objection to Claim") (Dkt. No. 240). KCC never intended to collect the loans from the Debtor, and the Debtor never intended to repay them. (Aff. of Debtor, Ex. A to Response; Debtor's Resp. to First Set of Interrogs., Ex. G to IRS Statement). In that regard, Debtor never executed any promissory notes to KCC. (Aff. of Debtor, Ex. A to Response; Debtor's Resp. to First Set of Interrogs., Ex. G to IRS Statement).

5. In approximately December 2006, KCC ceased doing business. (Aff. of Debtor, Ex. A to Response).

6. On February 16, 2007, KCC filed its voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code in a case styled and numbered *In re Kevin Coleman Construction, Inc.*, Case No. 07–00504–NPO.

7. Three days later, on February 19, 2007, the Debtor filed his voluntary petition for relief (the "Petition") pursuant to chapter 11 of the Bankruptcy Code in the above-styled and numbered case. (Dkt. No. 1).

8. On April 10, 2007, the Debtor filed a Motion for Substantive Consolidation (the "Consolidation Motion") (Dkt. No. 29), asking this Court to consolidate this case with the one filed by KCC. In the Consolidation Motion, the Debtor stated that he was the sole shareholder of KCC and that he and KCC commingled assets and liabilities, established "due/to/from" accounts, borrowed money from one another, and repaid each other's debts. *Id.* He further stated that all creditors treated him and the KCC as a single entity and that he guaranteed substantially all of the indebtedness of KCC. *Id.*

9. The Consolidation Motion was duly noticed to the IRS, all creditors, and parties-in-interest. (Dkt. No. 30). Neither the IRS nor any other creditor filed an objection to the relief requested.

10. On May 4, 2007, this Court entered an Order Granting Motion for Substantive Consolidation (the "Consolidation Order") (Dkt. No. 44), thereby consolidating this case with the case of *In re Kevin Coleman Construction, Inc.*, No. 07–00504–NPO. The IRS did not appeal the Consolidation Order in either case.

11. On October 2, 2007, the Debtor filed his plan of reorganization (the "Chapter 11 Plan") in this consolidated case. (Dkt. No. 147).

12. After conducting audits of the Debtor and KCC, the IRS on July 29, 2008, amended its original proof of claim (the "Amended Claim") (Claim No. 1–6) to include an unsecured priority claim against the Debtor in the amount of $74,283.21, including interest accrued to the date of the filing of the Petition. (Ex. B to IRS Statement). This amount represents the Debtor's unpaid individual income taxes for the years 2005 and 2006 arising out of alleged dividend income the Debtor incorrectly reported as loans from KCC. The IRS elected to treat the dividend income as "qualified dividends" subject to the capital gains tax rate and adjusted Debtor's taxes accordingly.[1] The tax adjustments prompted the IRS to file its Amended Claim. Consistent with its Amended Claim, the IRS filed its Objection to Confirmation of Debtors' Plan of Reorganization (Dkt. No. 179) on February 22, 2008.

13. On October 20, 2008, this Court confirmed the Chapter 11 Plan (Dkt. No. 234) for the consolidated estate. This Court temporarily resolved the unsettled issue of the unsecured priority claim of the IRS by requiring the Debtor to escrow $85,000 for payment of the Debtor's 2005 and 2006 federal income taxes and by retaining jurisdiction for the later adjudication of the Amended Claim.

14. On November 14, 2008, the Debtor filed its Objection to Claim. He argued that he and KCC never existed separately, so that any income received by him as dividend income or by KCC as business income in reality constituted income only to the Debtor. He complained that it would be unfair to allow the IRS to tax the same funds twice, i.e., once when they were initially received by KCC and taxed as corporate income and twice when they were received by the Debtor and taxed as dividend income.

15. On December 14, 2008, the IRS filed an Answer to the Debtor's Objection to Claim (Dkt. No. 252) in which it denied the Debtor's requested relief.

16. On March 27, 2009, the IRS filed its Motion, Statement, and IRS Memorandum.

17. The Debtor filed his Response, Response to the IRS Statement, and Debtor's Memorandum on April 13, 2009.

18. The IRS filed its Reply on May 4, 2009.

### Motion for Summary Judgment Standard and Burden of Proof

Under Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate when viewing the evidence in the light most favorable to the nonmoving party, the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Anderson v.*

---

**1.** The audits resulted in other tax adjustments, but the Debtor objected only to the adjustments related to the dividend income. (Debtor's Objection to Claim).

*Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56(e)(2) further provides, in relevant part:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial.

Fed.R.Civ.P. 56(e)(2).

Thus, once the moving party has made its required showing, the nonmoving party must go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories, and admissions on file designate specific facts to establish that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Ultimately, the role of this Court is "not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *see Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir.2000).

 The burden of proof in tax cases rests on the taxpayer in the non-bankruptcy context. *Woodall v. Comm'r*, 964 F.2d 361, 363 (5th Cir.1992). The burden does not shift to the IRS when an objection to a federal tax claim is litigated in bankruptcy court, except as otherwise provided by statute. *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 26, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). Although there is a mechanism under the Internal Revenue Code, 26 U.S.C. § 7491, that permits the shifting of the burden of proof to the IRS if the taxpayer complies with certain enumerated conditions, the Debtor here has not attempted to avail himself of its specific provisions. *See* 15 *Collier on Bankruptcy* ¶ TX5.03 [5][c] (Matthew Bender 15th ed.2005). Therefore, the Debtor has the burden of proving by a preponderance of the evidence that he did not receive taxable income from KCC in 2005 and 2006 and thus is not liable for any income tax deficiencies during those years.

## Discussion

### A. *Moline Properties and Separate Taxable Entity Principle*

 It is well accepted that for federal income tax purposes, a corporation is taxable as a separate and distinct entity from its shareholders if it was formed for a valid business reason or if it conducted any business activities after its formation. The United States Supreme Court (the "Supreme Court") in *Moline Properties v. Commissioner*, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943), explained the doctrine of corporate entity as follows:

> Whether the purpose [of incorporating] be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that *purpose is the equivalent of business activity or is followed by the carrying on of business* by the corporation, the corporation remains a separate taxable entity.

*Id.* at 439, 63 S.Ct. 1132 (emphasis added). The Fifth Circuit has recognized that it is only necessary to satisfy one of the two parts of the *Moline Properties* test, *United States v. Creel*, 711 F.2d 575, 578 (5th Cir.1983), *cert. den.*, 464 U.S. 1044, 104 S.Ct. 714, 79 L.Ed.2d 177 (1984), and that the degree of corporate purpose and activity requiring recognition of the corporation as a separate entity is extremely low, *Britt v. United States*, 431 F.2d 227, 235–37 (5th Cir.1970).

### 1. Business Purpose

 In the instant case, it is clear that KCC is a separate taxable entity under the principles established in *Moline Properties*. The Debtor himself admits in his pleadings that "[o]ne of the purposes of the creation of KCC was so that the corporation could perform construction work that had been acquired by the Debtor." (Response to the IRS Statement). *See Collins v. United States*, 514 F.2d 1282 (5th Cir.1975) (corporation has sufficient business purpose even if only reason for its formation is to obtain financing). For this reason alone, KCC was not a sham or "dummy" corporation within the meaning of *Moline Properties*. There are several court decisions recognizing corporations as separate taxable entities even though the corporations served extremely limited purposes. *See, e.g., Britt*, 431 F.2d at 235, 237 (to facilitate transfer of partnership interests to children); *Tomlinson v. Miles*, 316 F.2d 710, 711 (5th Cir.1963), *cert. denied*, 375 U.S. 828, 84 S.Ct. 71, 11 L.Ed.2d 60 (1963) (to facilitate management or conveyance of property owned by group of investors); *Lane v. United States*, 535 F.Supp. 397 (S.D.Miss.1981) (to construct apartment complex). Unlike in those cases, KCC was apparently a fully functioning company during the few years of its existence.

### 2. Business Activities

 Even if KCC served no "business purpose," it appears from KCC's Statement of Financial Affairs (Ex. C to Response) that KCC served the Debtor well during the period in question and was an active and viable business entity. KCC, for example, incurred debts, collected payments, employed both a bookkeeper and an accountant, and filed tax returns. Moreover, according to the Debtor himself, KCC did not actually cease doing business until late 2006. (Aff. of Debtor, Ex. A to Response). In order to ignore the separate corporate status of KCC for tax purposes, the Debtor would have to show that KCC did nothing other than, for example, hold title to property and shield assets from creditors. *Paymer v. Comm'r*, 150 F.2d 334, 336 (2d Cir.1945).

In support of his argument that KCC never actually existed apart from him, the Debtor relies on evidence showing the many different ways in which he blatantly ignored the formalities of KCC's separate existence. For example, he treated KCC's business assets as his own, he used corporate funds to pay his personal debts (including the filing fee in his bankruptcy case) (Dkt. No. 15), he borrowed money from KCC without any loan documentation, and he guaranteed substantially all of KCC's debts. This evidence, however, is irrelevant in determining whether KCC carried on any business activities as described in *Moline Properties*. Clearly, both parts of the *Moline Properties* doctrine are satisfied because KCC was organized for a business purpose, and KCC actually carried on some business activity.

The Debtor argues, almost as an afterthought, that the facts in *Moline Properties* are different from those in this case, but he does not attempt to explain why the Supreme Court's decision should not apply to this case. The evolution of the separate entity doctrine which culminated in the doctrine set forth in *Moline Properties* belies any intention by the Supreme Court to limit the formula it adopted to its specific facts. *See Britt*, 431 F.2d at 232–34 (discussing Supreme Court cases that led to formulation of corporate entity doctrine).

### B. Agency Exception to Separate Taxable Entity Principle

 As an alternative argument, the Debtor points out that the Supreme Court

in *Moline Properties* carved out an exception for a sham or "dummy" corporation: "In matters relating to revenue, the corporate form may be disregarded where it is a sham or unreal. In such situations the form is a bald and mischievous fiction." *Moline Props.*, 319 U.S. at 439, 63 S.Ct. 1132. According to the Debtor, KCC fits within this limited exception because KCC was nothing more than the Debtor's alter ego.

 In the corporate context, however, "sham" and "alter ego" are not synonymous. As explained by the Fifth Circuit in *United States v. Creel*, 711 F.2d 575, 578 (5th Cir.1983), a sham corporation is one established for no valid purpose—such as a corporation formed solely to escape taxation—and does not engage in any business activity. On the other hand, a corporation that is the alter ego of its shareholders and regarded by its owners as a simple "dummy" remains a separate taxable entity, even though its corporate veil might be pierced to allow the corporate creditors to reach the assets of the individual shareholders.

In *National Carbide Corp. v. Commissioner*, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779 (1949), the Supreme Court explained its holding in *Moline Properties*, as follows:

> [W]e have held [in *Moline Properties* ] that a corporation formed or operated for business purposes must share the tax burden despite substantial identity, in practical operation, with its owner. Complete ownership of the corporation, and the control primarily dependent upon such ownership ... are no longer of significance in determining taxability.

*Id.* at 429, 69 S.Ct. 726. As the Supreme Court in *National Carbide* made abundantly clear, the doctrine set forth in *Moline Properties* ignores the fact that a corporation is substantially the alter ego of its shareholders and instead focuses on the reasons why the dummy corporation was created and what business it actually conducted. For the reasons discussed above, KCC easily meets this test.

 The only exception to the separate taxable entity doctrine, as first recognized by the Supreme Court in *Moline Properties*, discussed at length in *National Carbide* and clarified in *Commissioner v. Bollinger*, 485 U.S. 340, 108 S.Ct. 1173, 99 L.Ed.2d 357 (1988), is when a corporation exists as a viable separate entity but is merely the agent for its shareholders. In that situation, evidence of control does not establish the existence of an agency since such control is typical of all shareholder-corporation relationships. Instead, for the agency exception to apply, the "usual incidents of an agency relationship" must exist in order to assure the "genuineness" of the agency relationship in the corporation-shareholder context. *National Carbide*, 336 U.S. at 429–34, 437, 69 S.Ct. 726. To prevent evasion of *Moline Properties*, the Supreme Court in *Bollinger*, its most recent decision on the matter, required the presence of the following three factors in order for the agency exception to apply:

> (1) written agency agreement at the time the assets are required by the corporate agent;
>
> (2) activities by both the principal and the agent consistent with the agreement; and
>
> (3) representation of the agency arrangement to all third parties dealing with the asset.

*Bollinger*, 485 U.S. at 347, 108 S.Ct. 1173.

 Although the Debtor attempts to invoke the exception to the *Moline Properties* doctrine, he has not presented any evidence to this Court suggesting the existence of a true agency relationship between KCC and himself—such as evidence

of a written agency agreement, evidence that the Debtor represented the agency relationship to third parties, or evidence that KCC otherwise functioned in a manner typical of an agent—all of which is required by *Bollinger*. *See, e.g., George v. Comm'r*, 844 F.2d 225 (5th Cir.1988) (corporation was true agent of partnership because of existence of written trust agreement, among other evidence).

### C. Alter Ego Theory for Disregarding Corporate Form

The Debtor in his brief cites several cases in which Mississippi courts have discussed the principle of piercing the corporate veil when a corporation is shown to be nothing more than the alter ego of its shareholder. *See Am. Mgmt. Corp. v. Dunlap*, 784 F.Supp. 1245 (N.D.Miss.1992) (whether shareholder was personally liable for breach of contract was factual issue for jury); *T.C.L., Inc. v. Lacoste*, 431 So.2d 918 (Miss.1983), *overruled in part by C & C Trucking Co. v. Smith*, 612 So.2d 1092 (Miss.1992) (whether corporate form should be ignored raised jury issue in breach of contract action); *Thames & Co. v. Eicher*, 373 So.2d 1033 (Miss.1979) (holding sole shareholder personally liable in breach of warranty action concerning purchase of new home). None of these cases involved the taxability issue presented here and as discussed previously, it is well settled that a corporation established to be a "separate entity" for tax purposes under *Moline Properties* will not be ignored pursuant to any corporate disregard theory under state law. *See Harris v. United States*, 764 F.2d 1126 (5th Cir.1985) (whether corporation was separate taxable identity is not same question as to whether it was alter ego for purpose of piercing its corporate veil).

### D. Substance-over-form Principle and Danielson Rule

The Debtor urges this Court to look beyond the form of his transaction and instead focus on its "economic reality" in order to prevent an unjust result. The Debtor does not specify which transaction he is referring to, but assumably, it is the incorporation of KCC,[2] since the only other transactions at issue were the transfers of corporate money from KCC to the Debtor in 2005 and 2006 and the Debtor freely admits that those transfers were in reality distributions of business income, not loans. The unjust result, according to the Debtor, is that his creditors "would suffer a clear injustice" if this Court rules in favor of the IRS and allows the Government to "double" tax him.[3]

In opposition to the Debtor's argument, the IRS points out that the Debtor has not produced any evidence showing that he was coerced or induced by fraud or duress to incorporate his business. In addition, the IRS cites a line of cases applying what is commonly known as the non-disavowal principle or the *Danielson* rule. *See Comm'r v. Nat'l Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974); *Comm'r v. Court Holding Co.*, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945), *superseded by statute*, 26 U.S.C. § 337; *Kluener v. Comm'r*, 154 F.3d 630 (6th Cir.1998); *Smith v. Comm'r*, 65 F.3d 37 (5th Cir.1995); *Adobe Res. Corp. v. United States*, 967 F.2d 152 (5th Cir.1992); *Spector v. Comm'r*, 641 F.2d 376, 385 (5th Cir. Unit A 1981) (adopting the *Danielson* rule). The *Danielson* rule is a burden of proof rule for substance-over-form challenges by taxpayers and requires a taxpay-

---

**2.** The IRS shares this Court's view of the Debtor's position.

**3.** For a discussion of the alleged unfairness of double taxation, *see infra* p. 13.

er who challenges the tax consequences of the form of his agreement to show as a preliminary matter that the agreement was unenforceable because of mistake, undue influence, fraud, or duress. *Comm'r v. Danielson,* 378 F.2d 771 (3d Cir.1967); *see Insilco Corp. v. United States,* 53 F.3d 95 (5th Cir.1995) (reaffirming continuing application of *Danielson* rule).

> [W]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, and may not enjoy the benefit of some other route he might have chosen to follow but did not.

*Nat'l Alfalfa,* 417 U.S. at 149, 94 S.Ct. 2129 (citations omitted). Thus, the IRS argues that although the government may look to the substance, rather than to the form, of a transaction in order to determine tax liability, the *Danielson* rule precludes a taxpayer like the Debtor from disavowing the form in order to obtain a tax advantage.

 In this regard, the arguments of both the IRS and the Debtor place too much emphasis on cases addressing the *Danielson* rule. The Supreme Court's decision in *Moline Properties,* not the substance-over-form analysis, applies in deciding whether a corporate entity is to be disregarded for income tax purposes. *See Creel,* 711 F.2d at 578. Under *Moline Properties,* the corporate form of an entity does not in itself determine its separate tax liability, so that the fact that KCC was incorporated under the laws of Mississippi does not resolve the issue as to whether it is a separate taxable entity. In this way, the *Moline Properties* doctrine applies its own version of the substance-over-form analysis for tax purposes, an analysis that the Debtor cannot waylay by attempting to formulate a diminished standard. Under the corporate entity doctrine, not even the

IRS can disregard a corporation so long as it was formed for a business purpose or carried on some business activity, except when there is unequivocal evidence that the business arrangement established an agency relationship. *See* Robert Thornton Smith, *Substance and Form: A Taxpayer's Right To Assert the Priority of Substance,* 44 Tax Law. 137, 146 (1990). The Debtor's argument regarding the "economic reality" of his business arrangements is merely "the same argument of identity in a different form." *Moline,* 319 U.S. at 440, 63 S.Ct. 1132. Finally, as to the Debtor's argument that his creditors will suffer harm, the Fifth Circuit has held:

> We do not believe ... that equity calls for the sudden abandonment of a corporation's independently taxable status once a bankruptcy petition is filed. Indeed, equity argues for the corporation to be treated consistently with the principles of taxation which governed its formation and existence.

*Creel,* 711 F.2d at 580.

### E. Double Taxation

 The Debtor complains in general about the unfairness of the federal tax system. More specifically, he complains that it would be wholly unfair for the IRS to collect taxes on dividend income from him after collecting taxes on business income from KCC.

 As pointed out by the IRS, the Debtor attempts to avoid a well-known characteristic of the federal tax system— the double taxation of distributed corporate income. When the Debtor formed KCC, he had many choices under Mississippi law but he chose the C corporation for doing business. Under the Internal Revenue Code, a C corporation is taxed once at the corporate level, 26 U.S.C. § 11(a), and again at the individual shareholder level, 26 U.S.C. §§ 61(a)(7),

301(c)(1). The Debtor could have avoided double taxation, for example, by forming a pass-through tax entity such as a subchapter S corporation, 26 U.S.C. §§ 1363(a), 1366, since the IRS would have taxed the business income, whether distributed or accumulated, only once at the shareholder level. Also, it goes without saying that the double taxation issue comes into play only when a corporation distributes its earning to its shareholders, so the Debtor could have easily avoided (or at least deferred) paying personal income taxes by not siphoning off KCC's corporate funds.

## F. Substantive Consolidation of Bankruptcy Cases

The Debtor next argues that when this Court ordered the substantive consolidation of his chapter 11 case with KCC's, this Court adjudicated the existence of only one "pre-petition" entity for all purposes, including federal tax purposes, an adjudication that the Debtor insists that the Court may not now revisit. (Debtor's Memorandum). The Debtor's argument, however, misconstrues the legal effect of substantive consolidation in bankruptcy and overstates the reach of the Consolidation Order.

 In 1941, the Supreme Court announced the birth of the doctrine of substantive consolidation in *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941), when it held that the assets of an individual debtor could be consolidated with the assets of a sham corporation to which the individual had transferred substantially all of his assets to avoid his personal creditors. The bankruptcy court's power of substantive consolidation is part of the court's general equitable powers as ex-

pressed in Section 105 of the Bankruptcy Code. 11 U.S.C. § 105(a); *see Sampsell,* 313 U.S. at 219, 61 S.Ct. 904; *see also In re S.I. Acquisition, Inc.,* 817 F.2d 1142, 1145 n. 2 (5th Cir.1987) (bankruptcy court has authority to order *de facto* disregard of corporate form through substantive consolidation). Substantive consolidation allows the court to disregard a separate corporate entity in order to reach assets for the satisfaction of debts of a separate but related debtor. Without substantive consolidation, debtors could insulate money through transfers to other corporations with impunity. The result of a substantive consolidation is the effective merger of two or more legally separate and distinct entities into a single debtor.

> In place of two or more debtors, each with its own estate and body of creditors, substantive consolidation substitutes a single debtor, a single estate with a common fund of assets, and a single body of creditors. Assets and liabilities of each entity are pooled and inter-entity accounts and claims are eliminated. Creditors of the separate entities become creditors of the consolidated entity.

*Gill v. Sierra Pac. Constr. Inc.,* 89 B.R. 832, 836 (Bankr.C.D.Cal.1988).

Early on, substantive consolidation rested squarely upon the "alter ego" doctrine of corporate disregard law, but since then, substantive consolidation has slowly evolved into an independent bankruptcy doctrine, distinct from "piercing the corporate veil."[4] For the first time, in *Chemical Bank New York Trust Co. v. Kheel,* 369 F.2d 845, 847 (2d Cir.1966), the Second Circuit based consolidation upon the practical difficulty of disentangling commingled

4. For a detailed discussion of the history of substantive consolidation and its growth away from the alter ego doctrine, see Mary Elizabeth Kors, *Altered Egos: Deciphering Substantive Consolidation,* 59 U. Pitt. L.Rev. 381, 386–97 (1998).

assets, rather than upon traditional veil piercing. More recently, the D.C. Circuit noted that substantive consolidation is ordered "typically to avoid the expense or difficulty of sorting out the debtor's records to determine the separate assets and liabilities of each affiliated entity." *In re Auto–Train*, 810 F.2d 270, 276 (D.C.Cir. 1987).

■ Although most courts agree on the principles underlying substantive consolidation, there is no uniform guideline for determining when it is appropriate, 2 *Collier on Bankruptcy* ¶ 105.09[2][a] (Matthew Bender 15th ed.2005), and the Fifth Circuit has not yet adopted its own criteria, *In re Permian Producers Drilling, Inc.*, 263 B.R. 510, 518 (W.D.Tex.2000), perhaps because consolidation requires such a fact-specific analysis. The two major factors most courts, however, will consider are whether creditors dealt with the debtors prior to the bankruptcy as if they were the same entity and whether the affairs of the debtors after the bankruptcy are so intertwined that the time and expense necessary to identify and allocate their assets and liabilities would likely erode the recovery of those assets and create substantial delays in effecting a distribution to creditors. *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988).

■ The Debtor in this case incorrectly equates consolidation with veil piercing when he argues that consolidation effectively pierced KCC's corporate veil for tax purposes so that "Debtor's pre-petition

business 'form' [was] that of an individual and not a corporation." (Debtor's Memorandum). Consolidation and veil piercing have very different remedies and very different effects on all involved. Consolidation is a remedy under bankruptcy law that brings all assets of the consolidated debtors into a single survivor and merges their liabilities. *In re Owens Corning*, 419 F.3d 195, 206 (3d Cir.2005) "The result is that claims of creditors against separate debtors morph to claims against the consolidated survivor." *In re Genesis Health Ventures*, 402 F.3d 416, 423 (3d Cir.2005). This treatment eliminates duplicate claims filed against several debtors by creditors uncertain as to which debtor was liable. *Kheel*, 369 F.2d at 847. Veil piercing, on the other hand, is a state law remedy that allows the creditor of one entity to recover its claim from a separate but related entity. *See Nash Plumbing, Inc. v. Shasco Wholesale*, 875 So.2d 1077, 1082 (Miss. 2004).

The main reason for substantively consolidating the two bankruptcy cases in this proceeding was essentially to carry out the chief purpose of the Bankruptcy Code—to treat the creditors of both debtors equitably, not to insulate the Debtor from his personal tax obligation.[5] Indeed, neither the Consolidation Motion nor the Consolidation Order mentions payment of the Debtor's individual federal income taxes, much less decides whether KCC is a separate entity for purposes of assessing such taxes.[6]

■ The Debtor's argument implies that this Court is somehow barred by the

---

**5.** The fact that the Debtor himself, and not a creditor of the Debtor or of KCC, sought substantive consolidation is not lost on this Court.

**6.** The Consolidation Order included only the following relief:

[T]he case of *In re: Kevin Coleman Construction, Inc.*, Chapter 11 Case No. 07–00504–NPO, is hereby substantively consolidated with and into, the case of *In re: Kevin Coleman*, Chapter 11 Case No. 07–00515–NPO. The case number in *In re: Kevin Coleman*, Case No. 07–00515–NPO, shall be the "surviving" case number.

"law of the case" doctrine from deciding or, as the Debtor states, from revisiting, the issue as to KCC's separate tax identity. The doctrine's reach, however, has its limits. Unlike *res judicata*,[7] the law of the case doctrine applies only to issues that actually were decided or that were decided by necessary implication. *Alpha/Omega Ins. Servs. v. Prudential Ins. Co.*, 272 F.3d 276, 279 (5th Cir.2001). The doctrine is premised "on the salutary and sound public policy that litigation should come to an end." *White v. Murtha*, 377 F.2d 428, 431 (5th Cir.1967). As to issues that were not explicitly decided, the doctrine applies only if those matters were fully briefed and were necessary foundations to the ability of the court to address those issues that were specifically discussed. *Alpha/Omega*, 272 F.3d at 279; *see also United States v. O'Keefe*, 169 F.3d 281, 283 (5th Cir.1999) (doctrine is discretionary in nature when applied by a court to its own prior decisions). The Consolidation Order never addressed the tax issue presented here, and the Debtor never previously raised the issue in a motion or at a hearing. The law of the case doctrine clearly does not apply.

Notably, in a similar case, *Limited Gaming of America v. Commissioner*, 82 T.C.M. (CCH) 761 (2001), the United States Tax Court (the "Tax Court") held that a bankruptcy court's order confirming a plan of reorganization that required the substantive consolidation of the estates of two related corporations did not preclude the IRS from determining the debtors' federal income taxes as separate taxable entities. The Tax Court relied heavily on the fact that the substantive consolidation order in the debtors' bankruptcy case, as in this one, did not specifically permit the debtors to report their federal income taxes on a consolidated basis. *See In re Ltd. Gaming of Am.*, 228 B.R. 275, 287 (Bankr. N.D.Okla.1998).

In order for the Consolidation Order to reach conduct of the Debtor and KCC during the years in question, 2005 and 2006, when the disbursements of corporate funds took place, it would have to apply the Consolidation Order retroactively even before the Debtors filed for bankruptcy in 2007. Although courts have consolidated cases retroactively to the filing date of the first bankruptcy petition, no court has done so to reach conduct that predates the filing of any petition. *See Auto–Train*, 810 F.2d at 277–78 (denying retroactive application of substantive consolidation because of harm upon innocent creditor); *In re Amco Ins.*, 444 F.3d 690, 695 (5th Cir.2006) (retroactive substantive consolidation invalidating prior authorization for state court action was abuse of discretion). As the Debtor himself acknowledges in his brief, there are no statutes or cases supporting his position.

Finally, although evidence produced by the Debtor that he treated KCC almost as though it did not exist was sufficiently persuasive for this Court to order consolidation, and would have been relevant in any veil-piercing action based upon state law, such evidence is wholly irrelevant to the question of KCC's separate taxability under the doctrine set forth in *Moline Properties* and its progeny for the reasons previously discussed at length.

---

7. *Res Judicata* applies where "(1) the parties to both actions are identical (or at least in privity); (2) the judgment in the first action is rendered by a court of competent jurisdiction; (3) the first action concluded with a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits." *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir.2000). If these conditions are met, *res judicata* merges or extinguishes all claims or defenses, even those that were not actually litigated. 18 James Wm. Moore et al., Moore's Federal Practice § 131.10 (3d ed.1997).

## Conclusion

For the reasons set forth above, the Court concludes that there are no genuine issues of material fact and that the IRS is entitled to summary judgment as a matter of law. The Court further concludes that for tax purposes, KCC is a separate and distinct entity from its sole shareholder, the Debtor. Therefore, the Motion for Summary Judgment filed by the IRS is granted, and the Debtor's Objection to Claim with regard to the Amended Claim filed by the IRS is overruled. Accordingly, the funds deposited in the escrow account pursuant to the Chapter 11 Plan are released to the IRS to the extent necessary to satisfy its Amended Claim.

A separate final judgment will be entered in accordance with Federal Rule of Bankruptcy Procedure 9021.

SO ORDERED.